# In the United States Court of Federal Claims

### No. 10-588C
### (Filed: July 24, 2014)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | |
| **DELAWARE CORNERSTONE** | * | |
| **BUILDERS, INC.,** | * | **Subject Matter Jurisdiction;** |
| | * | **Contract Disputes Act, 41 U.S.C.** |
| **Plaintiff,** | * | **§§ 7101-09; 48 C.F.R. § 2.101** |
| | * | **Claim; Contracting Officer's** |
| v. | * | **Final Decision; Failure to Appoint** |
| | * | **a Replacement Contracting** |
| **THE UNITED STATES,** | * | **Officer.** |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Eric R. Stanco, Stanco & Associates, 126 C Street, N.W., Washington, D.C. 20001, for Plaintiff.

Stuart F. Delery, Bryant G. Snee, Deborah A. Bynum, and Daniel B. Volk, U.S. Department of Justice, Civil Division, Washington, D.C. 20044, for Defendant.  Tony A. Ross, U.S. Department of Veterans Affairs Commercial Litigation Branch, Office of Regional Counsel-Region 3 Civil Division, Baltimore, MD 21218, Of Counsel.

_____

## OPINION AND ORDER OF DISMISSAL
_____

**WILLIAMS**, Judge.

Plaintiff, Delaware Cornerstone Builders, Inc. ("DCB"), brings this action under the Contract Disputes Act ("CDA"), claiming that the Department of Veterans Affairs ("VA") breached a contract for the replacement of a VA health care facility by failing to close out the contract and pay it $200,760.39 for work performed.

Because Plaintiff never presented a claim to the contracting officer for the relief it seeks in this action, the Court lacks subject-matter jurisdiction.

**Background**

 In late 2002, the VA awarded DCB a contract to replace a VA health care facility in Perry Point, Maryland.  The project had a final walk-through on June 10, 2004, and reached "substantial completion" on June 21, 2004.  Suppl. App. ("SA") 53, Oct. 12, 2004.  Plaintiff claims that as the project neared completion, the VA issued an extensive punch list covering work that the VA had previously accepted or was outside the scope of the contract.[1]

 On September 22, 2004, DCB sent the contracting officer, Kim Allgood, a letter entitled "Contracting Officer Final Decision[,] Progress Payment Request number 14," stating:

> [DCB] hereby resubmits its payment requisition number 14 in the amount of $143,490.39.  [DCB] also requests a Contracting Officer's Final Decision on this matter.

> *In accordance with the Contract Disputes Act:*

> *I certify this claim is made in good faith, that the supporting data is accurate and complete to the best of the Contractor's knowledge and belief; and the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable, and that I am duly authorized to bind the Contractor with respect to this claim.*

SA 14.  DCB's president certified DCB's claim and attached a progress payment request dated August 23, 2004, and an invoice in the amount of $143,490.39 to this letter.  SA 14-20.  DCB's invoice did not identify when the invoiced work was performed.  Id.  Nor is it clear from this invoice how DCB arrived at the $143,490.39 payment it sought.  Id.

 On October 12, 2004, the contracting officer responded to DCB's September 22, 2004 request, stating:

> I find [that] your recent payment request for the amount of $143,390.39 far exceeds the value of the work remaining to be performed.  Consequently, as I [have] explained to you and your site representative[,] we [cannot] release this payment request at this time.  Based upon the amounts for the work remaining and the delay costs[,] there are no funds available to be paid at this time.  Based on the attached retainage summary of costs in excess of balance due . . . there are no funds to be released at this time.

SA 53.  The contracting officer also directed DCB to complete "all work associated with the punch list" by October 22, 2004.  SA 53; Am. Compl. ¶ 12; see SA 4.  The referenced "retainage summary" was not attached to the October 12, 2004 letter.  SA 53.

---

[1]  The record does not include the punch list but shows that the VA issued one.  See, e.g., SA 42, 43, 44, 45, 46, 148.

2

On October 13, 2004, DCB wrote to the contracting officer, complaining that "[w]e have followed the contracting officer's written instructions regarding progress payments . . . and no progress money has been received in many months.  To date, no value of punch list has ever been tendered (*almost 4 months*)."  SA 51.

On October 16, 2004, in response to DCB's additional complaints about the lack of progress payments, Contracting Officer Allgood sent DCB five letters stating that payment would not be made until after DCB completed all work on the punch list.  See SA 46-50.  On November 23, 2004, the contracting officer sent DCB a letter indicating that it was "well beyond the date" he had given DCB to complete the punch list, and "effective immediately," the VA would hire another contractor to complete the project and "deduct the equitable amount from the contract per a deduct change order."  SA 42.[2]

The record before the Court does not reflect communications between the parties from November 23, 2004, until September 26, 2008.[3]  There were, however, internal VA discussions about the project's status and payment history.  On March 28, 2006, Steve Hopkins, a VA official, sent an email to William Picking, a VA Construction Coordinator, asking for the status of the DCB project.  SA 39-40.  In a follow-up email on April 7, 2006, Mr. Picking explained that while he had "just obligated [the] last of the punch list items," he still needed an unspecified amount of money as he had "never made final payment to the contractor, [or] resolved all [change orders and] known claims."  SA 39.  Contracting Officer Allgood wrote to Mr. Hopkins that same day, stating: "We have not settled/closed this contract and will need funds to make final payment to DCB."  SA 38.

On September 29, 2006, Contracting Officer Allgood died.  Def.'s App. 1.

On January 17, 2007, in an internal VA email to Mr. Hopkins, Mr. Picking stated:

[W]e have not had final settlement on [DCB's contract].  Any funds remaining on that project need to remain.  While we have completed all [punch list] & completion items by others, we have not heard from the Contractor who walked away from the project 2 years ago . . . .  There are unresolved change orders as well as retainage issues to address.  This will need to be done with a new Contract Specialist and they are currently shorthanded.

---

[2]   DCB claims that the VA had engaged a contractor, EDCO, months earlier on September 29, 2004, to perform this work.  Am. Compl. ¶ 16; see SA 4.

[3]   In his first declaration, Thomas J. Twigg, vice president of DCB's sub-subcontractor, Arica Consulting and Contracting LLC, stated that "[i]n April 2007, DCB . . . and Arica . . . agreed to stand still while DCB attempted to arrange a meeting with the Government to discuss DCB's claims."  First Twigg Decl. ¶ 13.  The record does not indicate whether such a meeting occurred.

SA 37.

On September 26, 2008, Plaintiff's then counsel, Paul Waters, asked the VA's Chief of Contracting at the project locale, Deborah Faulkner, to contact him to discuss the contract. SA 35. On October 2, 2008, Ms. Faulkner replied that she had assigned Contracting Officer Sandra Anderson, to look over the matter. Ms. Anderson advised DCB's counsel on October 14, 2008, that she had "not been able to shade [sic] a whole lot of light on this contract," and that she was unable to find evidence that DCB, or a contractor acting on behalf of DCB, had finished the work. SA 33, 35. Beginning on November 13, 2008, and continuing through 2010, Mr. Twigg, the vice president of DCB's sub-subcontractor, called three individuals at the VA repeatedly -- Sandra Anderson, Deborah Faulkner, and Thomas Lynn -- asking whether the VA had appointed a replacement contracting officer. First Twigg Decl. ¶¶ 19-24. Each time Mr. Twigg contacted the VA officials, "[he] was either promised a return telephone call which never came, or . . . [he] left a message for the Government representative which was never returned." Id. ¶ 23.

On December 4, 2008, Mr. Waters requested a mailing address to send a package to the VA. SA 29. Ms. Anderson replied, providing the address and asking:

> [I]n reference[] to this Claim that Delaware Cornerstone is submitting against the VA Medical Center, do you know if a "Formal Written of Claim" [sic] has been submitted? If not, I will need a formal written of Claim [sic] to be submitted with all the necessary information so I can submit [it] to our Legal Department. Please advise[.]

SA 28. DCB's counsel responded: "it is not a claim – DCB is seeking [its] final contract payment – do you have a contract summary in one of your computer files?" SA 28.

On December 11, 2008, counsel for the VA, Tony Ross, sent a fax to DCB's attorney, stating:

> It is my understanding that DCB claims that it has performed work under the contract for which it has not yet been paid.
>
> However, the correspondence that you forwarded to the contracting officer does not outline the basis for any such claim, nor does it specify the amount which DCB claims is due and owing under the . . . contract. Although you have forwarded several contract modifications which appear to have been issued under the contract, it is unclear whether DCB is claiming that it has not been paid for some [of] these modifications or any of them.
>
> Accordingly, in order to properly investigate and analyze this matter, please advise as to the basis of DCB's claim, the specific amount which DCB claims it is due, and provide any additional documentation in support of DCB's claim. Additionally, please be aware that, in accordance with applicable federal procurement regulations, if the amount which DCB claims it is due under the contract is in excess of $100,000.00, its claim must be properly certified and

executed by a person duly authorized to bind the contractor with respect to the claim.

SA 25.

In response to this letter, on January 8, 2009, DCB's counsel emailed Mr. Ross a copy of the September 22, 2004 progress payment request and stated: "Attached is [DCB's] last requisition submitted to the VA for the Project. [Please] review and call me tomorrow . . . to discuss. Thanks." SA 13-21.

More than a year and a half later, on August 31, 2010, Plaintiff filed this action. In its original complaint, DCB sought $200,760.39 for work performed, claiming that "[t]he failure of the Government to appoint a replacement contracting officer has made it impossible for DCB to submit these matters for a final decision by a contracting officer with authority under the Contract." Compl. ¶ 4, ¶ 48.

Defendant moved to dismiss the action, arguing that the Court lacked jurisdiction because DCB never filed a valid claim under the CDA for the damages it sought. During oral argument on this motion, the Court ordered the parties to identify "any submission to the Government that Plaintiff asserts constitutes a 'claim' under the CDA," and asked if Plaintiff was asserting that the September 22, 2004 progress payment request constituted a claim. Order 1-2, Aug. 2, 2011. Plaintiff's counsel replied that "the only claim that was submitted in the format that I would expect requesting a contracting officer's final decision under the CDA" was the September 22, 2004 progress payment request. Tr. 23, Aug. 22, 2011. Plaintiff's counsel continued: "I couldn't tell whether this was actually a claim that was submitted. On the top of the reference section it asks for a contracting officer's final decision, yet it's seeking payment under ordinary progress payments." Id. at 21.

Following oral argument, the Court ordered Defendant to supplement the record with documents indicating whether Plaintiff had filed a CDA claim, including:

(1) the close out of Contract V512(P)C-654, Task Order 5 ("the Contract"), (2) any reprocurement of the Contract, (3) any deductive modification of the Contract, (4) the amount the Government refused to pay the Plaintiff on the Contract, and (5) any unfiled documents relating to jurisdiction referenced during the August 22, 2011 argument.

Order 1, Aug. 22, 2011. On October 7, 2011, Defendant filed a supplemental appendix. The Court authorized Plaintiff to conduct limited discovery on the issue of jurisdiction, but Plaintiff chose not to.

On December 21, 2011, the parties submitted a joint status report. Plaintiff represented that it intended to immediately file a motion requesting leave to amend its Complaint "to clarify the facts and nature of the relief it is seeking in this action." Joint Status Report 2. On March 9, 2012, the Court directed Plaintiff to file its motion seeking leave to amend its complaint, along

with the proposed amended complaint, no later than April 9, 2012.  Order 2, Mar. 9, 2012.  The Order specified:

> Based on the current record, it is unclear whether Plaintiff contends that it has filed a "claim" [within] the meaning of the Contract Disputes Act, and if so, what document constitutes that claim, or whether Plaintiff posits that under the circumstances it need not have filed a claim.

Id.[4]

In its amended complaint, Plaintiff sought $200,760.39 for work performed under the contract, and did not assert that it had submitted a claim under the CDA.  Instead, Plaintiff alleged that the VA prevented it from filing a claim by refusing to appoint a replacement contracting officer and close out the contract after Contracting Officer Allgood died.  Am. Compl. ¶¶ 17-21.

Defendant filed the subject motion to dismiss the amended complaint, arguing that the Court lacked jurisdiction because Plaintiff never submitted a certified claim to the VA.  During a subsequent status conference, Plaintiff's counsel acknowledged that "no claim had been filed relevant to the matters alleged in the complaint because the contracting officer died."  Tr. 3, June 12, 2013.

Plaintiff's counsel further told the Court that DCB had submitted a request for payment in the amount of approximately $200,000 in 2010, and that the VA's failure to adequately address its request for payment along with the VA's failure to appoint a new contracting officer created an actionable claim in this Court.  Id. at 6, 17-18.  The Court ordered Plaintiff to specify "what document(s) constitute its claim giving rise to this action" on or before June 24, 2013.  Order, June 12, 2013.  Plaintiff did not timely respond to this Order.  The Court granted Plaintiff two extensions of time until August 1, 2013, but Plaintiff failed to respond.  Order, June 28, 2013; Order, July 3, 2013; see also Order, Sept. 5, 2013.

On September 5, 2013, the Court ordered Plaintiff to show cause as to why it failed to respond to the Court's June 12, 2013 Order.  In response, Plaintiff explained that while it had previously identified a "final payment" from December of 2008 as the basis of its claim, it had confirmed that, in fact, the September 22, 2004 request constitutes the basis for its claim. Plaintiff wrote:

> DCB and the United States of America (Government) appeared before the Court by telephone for a status conference on June 12, 2013. During that status conference, the Government raised the issue for the first time what constituted DCB's claim in this matter.  DCB's counsel explained [that] the final payment

---

[4]  Although Plaintiff filed its amended complaint one day late on April 10, 2012, the Court accepted the amended complaint after considering briefing on the circumstances of Plaintiff's late filing.

[DCB's] former counsel, Paul Waters, had submitted to the Government in December 2008 became its claim when the Government informed the contractor that it was retaining the entire remaining amount due under the contract.

The Court then noted that the payment application was not attached to DCB's Amended Complaint nor included in the Government's Supplemental Appendix (SA). Accordingly, the Court ordered the Plaintiff to identify exactly what document(s) made up the claim before the Court in this matter.

On December 8, 2008, Mr. Waters wrote to the Contract Specialist, Sandra Anderson, requesting release of DCB's remaining Contract balances. In support of that request, Mr. Waters submitted a copy of the last payment application DCB had presented to the Government, its progress payment application No. 14 (PP #14) in the amount of $143,490.39. (SA-14.) Despite Ms. Anderson's insistence DCB was submitting a "claim," Mr. Waters made clear that he was instead positing DCB's request for final payment. (SA-28.)

In response, on March 10, 2009, Tony A. Ross, Esquire wrote to Mr. Waters noting that the Government had hired another contractor, EDCO Contractors, Inc. (EDCO), to complete the final punch list work that DCB had refused to complete. He included a copy of EDCO's contract with the Government, which upon review DCB concluded contained numerous items of work not within its Contract as well as purported "warranty" work for which DCB had no responsibility. However, on May 5, 2009, Mr. Waters was informed the Government intended to backcharge DCB for the entire value of EDCO's contract totaling $163,000.23.

In preparing DCB's complaint and claim in this matter, plaintiff's present counsel, Eric Stanco, was told that the remaining contract balances due DCB totaled $200,760.39. As discussed in DCB's prior motions for extension, Mr. Stanco was not involved in this case at the time Mr. Waters submitted DCB's final pay request in December 2008, and he turned to prior counsel for the facts and documentation needed to respond to the Court's June 12, 2013 Order. However, because Mr. Waters had not had any involvement with this claim for several years he could not readily recall the facts surrounding that submission. As a result, he searched his computer files and other sources for the materials and information with which to prepare an appropriate affidavit regarding the December 2008 submission.

* * *

Ultimately, Mr. Waters reported that neither he nor DCB was able to locate a copy of Mr. Waters['] December 2008 submission to the Government nor could he recall the details of that transmission to be included in an affidavit. However, in the course of that discussion the attorneys realized that what Mr. Stanco had been referring to as the "final" payment application was actually

7

> DCB's PP #14 [-- the September 22, 2004 progress payment request.  SA 14.]
> Although Mr. Waters could not find the actual paperwork concerning the
> submission, he was able to confirm[] that the progress payment application in the
> Government's Supplemental Appendix was the same document referred to by Mr.
> Ross in his communications.  Accordingly, DCB's new counsel is now able to
> report . . .  that the document constituting DCB's claim is PP #14 [ -- the
> September 22, 2004 progress payment request].

Pl.'s Resp. 1-3, Sept. 20, 2013.

On January 14, 2014, the Court invited the parties to brief whether the September 22, 2004 progress payment request constitutes a valid claim under the CDA.  Plaintiff chose not to file a supplemental brief.

### Discussion

### Jurisdiction and Standard of Review

When deciding a motion to dismiss under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), the Court assumes that plaintiff's factual allegations are true and draws "all reasonable inferences in plaintiff's favor."  Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Goel v. United States, 62 Fed. Cl. 804, 806 (2004).  However, when a motion to dismiss challenges the factual basis of the Court's jurisdiction, the allegations in the complaint do not control, "and only uncontroverted factual allegations are accepted as true for purposes of the motion."  Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993); see also Vaeth v. United States, 110 Fed. Cl. 425, 429 (2013).  A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); BearingPoint, Inc. v. United States, 77 Fed. Cl. 189, 193 (2007).  The Court may consider materials extrinsic to the pleadings to determine the existence of subject-matter jurisdiction.  Cedars Sinai Med. Ctr., 11 F.3d at 1584.  If subject-matter jurisdiction cannot be established, the Court must dismiss plaintiff's complaint.  RCFC 12(h)(3); Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The Tucker Act confers jurisdiction on this Court to decide "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2006).  The Tucker Act further provides that "[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under Section 7104(b)(1) of title 41 [the Contract Disputes Act] . . . on which a decision of the contracting officer has been issued under section 6 of that Act."  Id. § 1491(a)(2).

The CDA permits a contractor to appeal the final decision of a contracting officer to this Court within 12 months of receiving the decision on a claim.  41 U.S.C. § 7104(b) (2006).  A contractor may also seek review in this Court if the contracting officer fails to respond to a contractor's claim within 60 days, as provided in the CDA.  Id. at § 7103(f).  As such, the

predicate for jurisdiction under the CDA is an appeal of either a contracting officer's final decision on claim or a deemed denial of a claim.  Id. at § 7104(b); Kellogg Brown & Root Servs., Inc. v. United States, 115 Fed. Cl. 46, 51-52 (2014).

## The VA's Failure to Appoint a Replacement Contracting Officer Does Not Eliminate the Requirement to Submit a Claim

In its amended complaint, Plaintiff does not assert that it submitted a proper claim under the CDA.  Rather, Plaintiff maintains that the VA's refusal to appoint a new contracting officer to administer a close-out of the parties' contract established its right to sue in this Court.  See Am. Compl. ¶¶ 17-21.  The CDA mandates that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1) (emphasis added).  The Federal Circuit has explained that the "submit" language in the CDA "is not related to the minutia of addressing or delivering claim letters, . . . but is merely a requirement that once a claim is made, the parties must 'commit' the claim to the contracting officer and 'yield' to his authority to make a final decision." Dawco Constr., Inc. v. United States, 930 F.2d 872, 880 (Fed. Cir. 1991), overruled on other grounds by Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1579 (Fed. Cir. 1995).  The purpose of the claim requirement is to enable the Contracting Officer to give meaningful consideration to the claim and facilitate resolution or identify issues for litigation.

Even if no contracting officer was appointed to handle DCB's contract after the death of Mr. Allgood, Plaintiff could have submitted a claim to the agency.  A claim need not be submitted directly to the contracting officer.  See Neal & Co. v. United States, 945 F.2d 385, 388-89 (Fed. Cir. 1991) (finding that the submission of a claim to contractor's primary contact with the Government, delivered to the contracting officer thereafter, was a proper claim under the CDA); Am. Pac. Roofing Co. v. United States, 21 Cl. Ct. 265, 267-68 (1990) (explaining that Congress constructed the CDA in a manner permitting "appropriate Government officers to receive written claims and forward them to the [contracting officer]").  Here, DCB had several VA contacts.  When DCB's former counsel attempted to close out the VA contract in 2008, counsel interacted with Deborah Faulkner, Chief of Contracting at the VA Medical Center, Sandra Anderson, a contracting officer,[5] and Tony Ross, a staff attorney.  Plaintiff never sent any of them a claim, even though these VA officials repeatedly advised DCB's counsel that Plaintiff needed to submit a formal written claim.  On December 4, 2008, Contracting Officer Anderson wrote to DCB's former counsel, stating:

> [I]n reference[] to this Claim that Delaware Cornerstone is submitting against the VA Medical Center, do you know if a "Formal Written of Claim" [sic] has been submitted?  If not, I will need a formal written of Claim [sic] to be submitted with all the necessary information so I can submit [it] to our Legal Department.  Please advise[.]

---

[5]  Sandra Anderson is also referred to as a contracting specialist.  SA 28.

SA 28, see SA 34. In response, DCB's counsel stated: "it is not a claim – DCB is seeking [its] final contract payment . . . ." Id. On December 11, 2008, in response to DCB's request for payment, VA counsel advised DCB's counsel that the VA required "the basis of DCB's claim, the specific amount which DCB claims it is due, and . . . any additional documentation in support of DCB's claim" so it could properly investigate the matter. SA 25. Rather than submit a formal claim, Plaintiff brought suit in this Court 20 months later. See Tr. 3, Jun. 12, 2013.

In arguing that the agency's failure to appoint a new contracting officer creates a right under the CDA to bring suit in this Court, Plaintiff asks the Court to impermissibly expand its jurisdiction. It is well established that a waiver of sovereign immunity such as that found in the CDA must be strictly construed. Orff v. United States, 545 U.S. 596, 601-02 (2005); Lane v. Pena, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied.") (internal citations omitted). Moreover, the statutory requirement that a contractor submit a claim is important, as the contractor's claim triggers both the running of interest and the time period for the contracting officer's final decision. "There is nothing in the CDA that excuses contractor compliance with the explicit CDA claim requirements." M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1329 (Fed. Cir. 2010). As such, Plaintiff cannot prevail on its theory that the VA's failure to appoint a replacement contracting officer to close out the contract excused DCB's failure to submit a claim. See 41 U.S.C. § 7104(b)(1).[6]

**The September 22, 2004 Submission Does Not Raise the Same Claim As This Action**

Although Plaintiff has vacillated regarding whether the September 22, 2004 request for progress payment is a CDA claim giving rise to this Court's jurisdiction, the Court addresses this matter. Compare SA 25, 28 with Pl.'s Resp. 1-3. The September 22, 2004 letter was a certified, written demand for $143,490.39 that sought a final decision from the contracting officer. This letter was also the resubmission of an August 23, 2004 progress payment request that was not in dispute at the time of its initial submission.

The CDA does not define the term "claim," but the Federal Acquisition Regulation ("FAR") defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract." FAR 2.101 (2010). Thus, the elements of a claim are: (i) a written demand, (ii) seeking, as a matter of right, (iii) the payment of money in a sum certain. James M. Ellet Constr. Co. v. United States, 93 F.3d 1537, 1542 (Fed. Cir. 1996); Reflectone, 60 F.3d at 1575. Additionally, all claims requesting relief greater than $100,000 must be certified by the contractor. 41 U.S.C. § 7103(b).

---

[6] To the extent Plaintiff seeks payment for a benefit conferred on the VA, such a claim would sound in quantum meruit, and this Court would lack jurisdiction. Hercules, Inc. v. United States, 516 U.S. 417, 423 (1996).

FAR 2.101 provides that "[a] voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim, by written notice to the contracting officer as provided in 33.206(a), if it is disputed either as to liability or amount or is not acted upon in a reasonable time."[7]  See Scan-Tech Sec., L.P. v. United States, 46 Fed. Cl. 326, 331 (2000) ("[A] dispute must exist at the time of submission or the Government must unreasonably delay in paying the request and the contractor must notify the [contracting officer] in writing that it is submitting a claim for the routine request to ripen into a claim under the CDA.").

Plaintiff provided the VA with requisite notice via the September 22, 2004 submission that the August 2004 progress payment request was intended to be a claim. As such, the August 2004 routine progress payment request was converted into a claim for $143,490.39 when DCB's September 2004 submission notified the VA that this amount had not been paid, was disputed, and was the subject of a request for a contracting officer's final decision. However, an independent legal impediment prevents the August 2004 progress payment request or its resubmission via the September 22, 2004 letter from forming the jurisdictional predicate for this action -- the September 22, 2004 submission seeks different relief than the amended complaint. The September 22, 2004 progress payment request seeks $143,490.39, representing a single invoice and request for a progress payment. Here, the parties are not litigating the $143,490.39 invoice that was the subject of the August 2004 progress payment request re-submitted on September 22, 2004. The amended complaint seeks damages of $200,760.39 for the "release [of the] remaining earned contract balances," and implicates both the unidentified punch list items and undescribed portions of the work DCB performed. Compare SA 14 with Am. Compl. ¶ 1. According to the Government, DCB failed to complete the work, and the Government retained another contractor to finish that work. It is unclear what work DCB claims remains uncompensated. Further, DCB did not allege in its amended complaint that it was appealing the denial or deemed denial of its September 22, 2004 submission. Plaintiff has not articulated how it arrived at the $200,760.39 contract balance, and the record does not illuminate how Plaintiff computed this amount. Nor did Plaintiff ever certify a claim in the amount of $200,760.39.

Because the amended complaint does not contain the same claim as the September 22, 2004 progress payment request, this Court lacks jurisdiction. "An action brought before the Court of Federal Claims under the CDA must be 'based on the same claim previously presented to and denied by the contracting officer.'" Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003) (quoting Cerberonics, Inc. v. United States, 13 Cl. Ct. 415, 417 (1987)); see AAB Joint Venture v. United States, 74 Fed. Cl. 367, 370 (2005) (stating that this Court lacks jurisdiction over "a new claim or a claim of different scope brought by a contractor that was not previously presented and certified to the contracting officer for decision"); Orbas & Assocs. v. United States, 34 Fed. Cl. 68, 70-71 (1995).

---

[7]  FAR 33.206(a) requires that a claim be submitted to the contracting offer within six years of the claim's accrual.

## Conclusion

The Court **GRANTS** Defendant's motion to dismiss.  The Clerk of Court is directed to dismiss the complaint for lack of jurisdiction.

/s/ Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**